**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

_____

|  |  |  |
|---|---|---|
| **BARRY KELVIN GREEN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL NO. 3:10CV764** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

_____)

### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

This matter is before the Court for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on cross-motions for summary judgment.[1]  Plaintiff, Barry Kelvin Green, seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying his applications for Social Security Disability ("DIB") and Supplemental Security Income payments ("SSI").  The Commissioner's final decision is based on a finding by an Administrative Law Judge ("ALJ") that Plaintiff was not disabled as defined by the Social Security Act ("the Act") and applicable regulations.

For the reasons discussed herein, it is the Court's recommendation that Plaintiff's motion for summary judgment (docket no. 9) be DENIED; that Defendant's motion for summary

---

[1] The administrative record in this case has been filed under seal, pursuant to Local Civil Rules 5 and 7(C).  In accordance with these Rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments and will further restrict its discussion of Plaintiff's medical information to only the extent necessary to properly analyze the case.  E.D. Va. Loc. R. 5, 7(C).

judgment (docket no. 11) be GRANTED; and that the final decision of the Commissioner be AFFIRMED.

## I. PROCEDURAL HISTORY

Plaintiff protectively filed for SSI and DIB on June 14, 2007, claiming disability due to degenerative disc disease, with an alleged onset date of June 1, 2007. (R. at 45-48, 62, 98.) The Social Security Administration ("SSA") denied Plaintiff's claims initially and on reconsideration.[2] (R. at 33-38; 27-28.) On June 26, 2009, accompanied by counsel, Plaintiff testified before an ALJ. (R. at 215-41.) On August 5, 2009, the ALJ denied Plaintiff's application, finding that he was not disabled under the Act where, based on his age, education, work experience and residual functional capacity, there are jobs he could perform which exist in significant numbers in the national economy. (R. at 8-17.) The Appeals Council subsequently denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner subject to judicial review by this Court. (R. at 3-6.)

## II. QUESTION PRESENTED

Is the Commissioner's decision that Plaintiff is not entitled to benefits supported by substantial evidence on the record and the application of the correct legal standard?

## III. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, the Court is limited to determining whether the Commissioner's decision was supported by substantial evidence on the record and whether the proper legal standards were applied in evaluating the evidence. Johnson

---

[2] Initial and reconsideration reviews in Virginia are performed by an agency of the state government−the Disability Determination Services (DDS), a division of the Virginia Department of Rehabilitative Services−under arrangement with the SSA. 20 C.F.R. Part 404, Subpart Q; see also § 404.1503. Hearings before administrative law judges and subsequent proceedings are conducted by personnel of the federal SSA.

v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir.

1990).  Substantial evidence is more than a scintilla, less than a preponderance, and is the kind of

relevant evidence a reasonable mind could accept as adequate to support a conclusion.  Craig v.

Chater, 76 F.3d 585, 589 (4th Cir. 1996) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971);

Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

      In order to find whether substantial evidence exists, the Court is required to examine the

record as a whole, but it may not "'undertake to re-weigh conflicting evidence, make credibility

determinations, or substitute [its] judgment for that of the Secretary.'"  Mastro v. Apfel, 270 F.3d

171, 176 (4th Cir. 2001) (quoting Craig, 76 F.3d at 589).  In considering the decision of the

Commissioner based on the record as a whole, the Court must "'take into account whatever in the

record fairly detracts from its weight.'"  Breeden v. Weinberger, 493 F.2d 1002, 1007 (4th Cir.

1974) (quoting Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1951)).  The

Commissioner's findings as to any fact, if the findings are supported by substantial evidence, are

conclusive and must be affirmed.  Perales, 402 U.S. at 390.  While the standard is high, if the

ALJ's determination is not supported by substantial evidence on the record, or if the ALJ has

made an error of law, the district court must reverse the decision.  Coffman v. Bowen, 829 F.2d

514, 517 (4th Cir. 1987).

      A sequential evaluation of a claimant's work and medical history is required in order to

determine if a claimant is eligible for benefits.  20 C.F.R. §§ 416.920, 404.1520; Mastro, 270

F.3d at 177.  The analysis is conducted for the Commissioner by the ALJ, and it is that process

that a court must examine on appeal to determine whether the correct legal standards were

applied, and whether the resulting decision of the Commissioner is supported by substantial

evidence on the record.

The first step in the sequence is to determine whether the claimant was working at the time of the application and, if so, whether the work constituted "substantial gainful activity" (SGA).[3]  20 C.F.R. §§ 416.920(b), 404.1520(b).  If a claimant's work constitutes SGA, the analysis ends and the claimant must be found "not disabled," regardless of any medical condition.  Id.  If the claimant establishes that he did not engage in SGA, the second step of the analysis requires him to prove that he has "a severe impairment . . . or combination of impairments which significantly limit[s] [his] physical or mental ability to do basic work activities."  20 C.F.R. § 416.920(c); see also 20 C.F.R.404.1520(c).  In order to qualify as a severe impairment that entitles one to benefits under the Act, it must cause more than a minimal effect on one's ability to function.  20 C.F.R. § 404.1520(c).  At the third step, if the claimant has an impairment that meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (listing of impairments) and lasts, or is expected to last, for twelve months or result in death, it constitutes a qualifying impairment and the analysis ends.  20 C.F.R. §§ 416.920(d), 404.1520(d).  If the impairment does not meet or equal a listed impairment, then the evaluation proceeds to the fourth step in which the ALJ is required to determine whether the claimant can return to his past relevant work[4] based on an assessment of the claimant's residual functional

---

[3] SGA is work that is both substantial and gainful as defined by the Agency in the C.F.R. Substantial work activity is "work activity that involves doing significant physical or mental activities.  Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before."  20 C.F.R. ç 404.1572(a).  Gainful work activity is work activity done for "pay or profit, whether or not a profit is realized."  20 C.F.R. ç 404.1572(b).  Taking care of oneself, performing household tasks or hobbies, therapy or school attendance, and the like, are not generally considered substantial gainful activities.  20 C.F.R. § 404.1572(c).

[4] Past relevant work is defined as SGA in the past fifteen years that lasted long enough for an individual to learn the basic job functions involved.  20 C.F.R. §§ 416.965(a), 404.1565(a).

capacity (RFC)[5] and the "physical and mental demands of work [the claimant] has done in the past." 20 C.F.R. §§ 416.920(e), 404.1520(e). If such work can be performed, then benefits will not be awarded. Id. However, if the claimant cannot perform his past work, the burden shifts to the Commissioner at the fifth step to show that, considering the claimant's age, education, work experience, and RFC, the claimant is capable of performing other work that is available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(f), 404.1520(f); Powers v. Apfel, 207 F.3d 431, 436 (7th Cir. 2000) (citing Bowen v. Yuckert, 482 U.S. 137, 146, n.5 (1987)); Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The Commissioner can carry his burden in the final step with the testimony of a vocational expert ("VE"). When a VE is called to testify, the ALJ's function is to pose hypothetical questions that accurately represent the claimant's RFC based on all evidence on record and a fair description of all the claimant's impairments so that the VE can offer testimony about any jobs existing in the national economy that the claimant can perform. Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989). Only when the hypothetical posed represents *all* of the claimant's substantiated impairments will the testimony of the VE be "relevant or helpful." Id. If the ALJ finds that the claimant is not capable of SGA, then the claimant is found to be disabled and is accordingly entitled to benefits. 20 C.F.R. §§ 416.920(f)(1), 404.1520(f)(1).

---

[5] RFC is defined as "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR-96-8p. When assessing the RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. Id. (footnote omitted).

## IV.  ANALYSIS

The ALJ found at step one that Plaintiff had not engaged in SGA since the alleged onset of his disability.  (R. at 13.)  At steps two and three, the ALJ found that Plaintiff had the severe impairment of degenerative disc disease of the lumbar spine, but that this impairment did not meet or equal any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1, as required for the award of benefits at that stage.  (R. at 13-14.)  The ALJ next determined that Plaintiff had the RFC to perform light work, except that he could occasionally climb, balance, stoop, kneel, crouch, and crawl.  (R. at 14-16.)  Also, due to medication side effects, the ALJ found that Plaintiff needs to avoid moderate or greater exposure to hazards such as unprotected heights or dangerous machinery.  (R. at 14-16.)

The ALJ then determined at step four of the analysis that Plaintiff could not perform his past relevant work as a finish carpenter or backhoe operator because of the levels of exertion required in each position.  (R. at 15.)  At step five, after considering Plaintiff's age, education, work experience and RFC, the ALJ nevertheless found that there are other occupations which exist in significant numbers in the national economy that Plaintiff could perform.  (R. at 16-17.)  Accordingly, the ALJ concluded that Plaintiff was not disabled and was employable such that he was not entitled to benefits.  (R. at 17.)

Plaintiff moves for a finding that he is entitled to benefits as a matter of law, or in the alternative, he seeks reversal and remand for additional administrative proceedings.  (Pl.'s Mot. for Summ. J.)  In support of his position, Plaintiff argues that: (1) the ALJ did not assign proper weight to his treating physician's opinion; (2) the ALJ's credibility findings "ignore and misstate" the facts; and (3) the ALJ erred in not eliciting the testimony of a vocational expert. (Pl.'s Mem. in Supp. of Mot. for Summ. J. ("Pl.'s Mem.") at 11-24.)  Defendant argues in

opposition that the Commissioner's final decision is supported by substantial evidence and

application of the correct legal standard such that it should be affirmed.  (Def.'s Mot. for Summ.

J. and Br. in Supp. Thereof ("Def.'s Mem.") at 13-25.)

A.     **Substantial evidence supports the ALJ's decision to only afford Plaintiff's treating physician's opinion "some" weight.**

Plaintiff argues that the ALJ ignored much of the evidence supporting his claim for

benefits and that his treating physician's (Dr. Williams) opinion was entitled to at least

significant weight.  (Pl.'s Mem. at 11-15.)  Plaintiff contends that the ALJ's reliance on the

nonexamining and consulting physicians' opinions is contrary to the facts in his case.  (Pl.'s

Mem. at 11.)  Plaintiff also asserts that the ALJ failed to specify how Dr. Williams' treatment

notes are inconsistent with his opinion.  (Pl.'s Mem. at 13.)

During the sequential analysis, when the ALJ determines whether the claimant has a

medically-determinable severe impairment, or combination of impairments which would

significantly limit the claimant's physical or mental ability to do basic work activities, the ALJ

must analyze the claimant's medical records that are provided and any medical evidence

resulting from consultative examinations or medical expert evaluation that have been ordered.

See 20 C.F.R. § 416.912(f).  When the record contains a number of different medical opinions,

including those from the Plaintiff's treating physician(s), consultative examiners or other sources

that are consistent with each other, then the ALJ makes a determination based on that evidence.

See 20 C.F.R. § 416.927(c)(2).  If, however, the medical opinions are inconsistent internally with

each other, or other evidence, the ALJ must evaluate the opinions and assign them respective

weight to properly analyze the evidence involved.  20 C.F.R. § 416.927(c)(2), (d).  Under the

applicable regulations and case law, a treating physician's opinion must be given controlling

weight if it is well-supported by medically-acceptable clinical and laboratory diagnostic

7

techniques and is not inconsistent with other substantial evidence in the record.  Craig, 76 F.3d at 590; 20 C.F.R. § 416.927(d)(2); SSR 96-2p.  However, the regulations do not require that the ALJ accept opinions from a treating physician in every situation, e.g., when the physician opines on the issue of whether the claimant is disabled for purposes of employment (an issue reserved for the Commissioner), or when the physician's opinion is inconsistent with other evidence, or when it is not otherwise well supported.  Jarrells v. Barnhart, No. 7:04-CV-00411, 2005 WL 1000255, at *4 (W.D. Va. Apr. 26, 2005).  See 20 C.F.R. § 404.1527(d)(3)-(4), (e).

Dr. Williams, who began treating Plaintiff in April 2008, opined in June 2009 that Plaintiff suffered from back pain and had a guarded prognosis.  (R. at 108.)  He also noted that Plaintiff's medications were helpful in relieving his pain but had sedating side effects; that pain interfered with attention and concentration frequently; that Plaintiff would be absent from work more than three times a month; and that Plaintiff could not walk a single city block.  (R. at 108-11.)  However, when asked at the hearing before the ALJ about Plaintiff's limitations regarding sitting and standing, Dr. Williams testified that such limitations were "not known."  (R. at 108-11.)  Dr. Williams also noted that Plaintiff could only occasionally carry less than ten pounds, but that such an opinion was a "guesstimate."  (R. at 108-11.)  Dr. Williams further stated that Plaintiff was "unable to work in my opinion," which is similar to his March 2009 opinion that Plaintiff was "unable to participate in employment and training activities in any capacity at this time."  (R. at 108-13.)

The ALJ found that the opinion of Plaintiff's treating physician, Dr. Williams, was entitled to only some weight in determining Plaintiff's RFC.  After evaluating the medical evidence of record, the ALJ noted that Dr. Williams' speculation and opinion were inconsistent with his own treatment notes and other treatment records in the file, the generally normal

findings on physical examinations, the nature of his medical care, and Plaintiff's admitted daily activities.  (R. at 16.)  It is for those reasons that Dr. Williams' opinion was not entitled to controlling weight.  Indeed, Dr. Williams was unable to opine on the functional limitations of sitting and standing, and he only offered a "guesstimate" as to how much weight Plaintiff could carry.  Further, treatment notes from Dr. Williams consist primarily of follow-ups for medication refills.[6]  (R. at 114-21.)  Such notes indicate that Plaintiff continued to complain of back pain, which had been ongoing since 2001.  On September 2, 2008, at one of his follow-up appointments for medication refills, Plaintiff reported that he was "doing some work."  (R. at 118.)  The next month, Plaintiff claimed that the medications were not providing him any relief, and that he was hurting more than before.  (R. at 117.)  In December 2008, again at a follow-up for medication refills, Plaintiff reported difficulty balancing his pain medications because of "sedating effects."  (R. at 116.)  Such records simply do not indicate that Plaintiff is unable to work in any kind of gainful activity.  Certainly, Plaintiff may not be able to return to his previous work, which was heavier in exertion, but that does not mean that Plaintiff is incapable of performing work at a lower exertional level.  An individual does not have to be pain-free in order

---

[6] The Court also notes that Plaintiff treated with another physician, Dr. Nader, before Dr. Williams.  Records from Dr. Nader also indicate that the primary reason for Plaintiff's visits was medication refills.  (R. at 140-148, 166-82.)  In July 2007, Plaintiff requested a change in his pain medication.  (R. at 147.)  It was noted that Plaintiff had seen pain management at another facility, yet after a positive urine test, they refused to provide him with prescription medication.  (R. at 147.)  In August 2007, Plaintiff sought stronger medication for his pain.  (R. at 146.)  He was also referred to the Moss free health clinic.  (R. at 145.)  In November 2007, records indicate that Plaintiff was doing part-time work, needed pain medication to do part-time work, and told Dr. Nader that he was not allowed for unemployment benefits so he would try disability.  (R. at 142.)   Notes indicate that Plaintiff had to find a way to control his pain.  (R. at 142.)  In January 2008, notes indicate that Plaintiff advised Dr. Nader that he had been drinking the night before to "kill the pain," and Dr. Nader noted an alcohol odor.  (R. at 140.)  When Plaintiff returned a month later for medication refills, he was advised that it would be his last prescription.  (R. at 167.)  Plaintiff attempted to receive another refill the next month, but Dr. Nader refused and advised Plaintiff that he needed to cease pain medication.  (R. at 166.)  There are no further records from Dr. Nader.

to be found "not disabled."  See Hays v. Sullivan, 907 F.2d 1453, 1457-58 (4th Cir. 1990); see also Dumas v. Schweiker, 712 F.2d 1545, 1552 (2d Cir. 1983).

With regard to Dr. Williams' statements that Plaintiff was "unable to work" and "unable to participate in employment and training activities in any capacity," Plaintiff completely misunderstands the fact that speculation as to employability carries no probative value, as such a statement opining on the ultimate issue of disability, which is reserved to the Commissioner. Plaintiff repeatedly urges this Court that "the ALJ's adoption of Dr. Newell's unsupported opinion on [Plaintiff's] work capacity, when he characterized the treating physician's conclusion that [Plaintiff] is unable to work as 'speculative,' is improper application of a completely different standard."  (Pl.'s Mem. at 14-15.)  What Plaintiff fails to understand is that Dr. Newell set out specific functional limitations in opining that Plaintiff was capable of performing light work.  However, Dr. Williams merely opined that Plaintiff was unable to work or participate in training activities.  Such a statement does *not* include specific functional limitations – it is merely speculation about Plaintiff's employability.  It is for this reason that the ALJ found that Dr. Williams' statement was not entitled to any probative weight.

Plaintiff urges the Court that a 2008 MRI is indicative of the severe pain that he experiences and, accordingly, is significant in finding that he is disabled.  The MRI indicates that findings were most pronounced at the L3-L4 level, where there was worsening moderate to severe central canal stenosis.  (R. at 129, 131-32.)  As a result, the treatment plan that was recommended was for a referral for epidurals, which Dr. Suthar in May 2009 opined were "medically necessary and indicated."  (R. at 126-27.)  Dr. Suthar also noted that the L3-L4 level was "higher than where [Plaintiff's] pain is."  (R. at 126.)  However, according to Plaintiff, he

was not placed on any medical restrictions by his physicians.  (R. at 230.)  Plaintiff received the injection two days before the hearing, but claimed it offered him no relief.  (R. at 222-23.)

The ALJ noted several observations regarding Plaintiff's medical history that do not comport with the severity of limitations opined by Dr. Williams.  In terms of Plaintiff's alleged musculoskeletal pain, the ALJ stated that treatment records reflect Plaintiff's subjective complaints of low back pain and at times balance problems due to his medications, and confirmed that he has a history of undergoing a laminectomy in 2001.  (R. at 15.)  The ALJ noted that Plaintiff had not required any surgical treatment or hospitalizations for his back since 2001; that he had not undergone physical therapy or required emergency treatment for pain since his alleged onset date; his pain had been treated conservatively with medications; treatment records consisted primarily of follow-up visits for medication refills; and that findings on physical examinations were generally unremarkable.[7]  (R. at 15, 114-21, 134, 136, 138, 140-48, 166-67, 182-87.)  The ALJ also noted that despite decreased range of motion in his lumbar spine, and at times a stiff gait due to his tight muscles, Plaintiff's straight leg raises were negative; his deep tendon reflexes were equal; he had no muscle atrophy, sensation deficits, or motor deficits; his coordination was intact; his lower extremity strength was 5/5 bilaterally; and his gait was usually normal.  (R. at 15.)

---

[7] Plaintiff also attempts to argue that his lack of insurance and funds had a negative impact on the outcome of his case.  Plaintiff specifically asserts that the ALJ omitted in his decision "the crucial fact that [Plaintiff] has no health insurance and no money which makes him very fortunate to have had access to any medical care at all."  (Pl.'s Mem. at 14.)  Plaintiff even goes so far as to suggest that the ALJ denied Plaintiff benefits *because* of his financial status.  (Pl.'s Mem. at 17 n.7.)  However, Plaintiff has not presented any factual evidence that his lack of insurance – which, according to the record did not prevent him from receiving medical care at a free clinic – was the basis for the ALJ's decision to deny benefits.  As Plaintiff himself notes, "there was no prescription of surgery or physical therapy that [Plaintiff] failed to follow."  (Pl.'s Mem. at 17.)  As such, Plaintiff cannot now argue that his lack of insurance had any impact on his claim for benefits, when he concedes that he followed the treatment prescribed by physicians.

Based on the above noted evidence, and the remainder of the record, it cannot be said that substantial evidence does not support the ALJ's decision to afford Dr. Williams' opinion only minimal weight.  Dr. Williams could not opine on Plaintiff's abilities to sit or stand; nor could he accurately offer an opinion on Plaintiff's ability to carry objects.  Though Dr. Williams noted that Plaintiff's medications had "sedating effects," "'[d]rowsiness often accompanies the taking of medication, and it should not be viewed as disabling unless the record references serious functional limitations.'"  Johnson v. Barnhart, 434 F.3d 650, 658 (4th Cir. 2005) (quoting Burns v. Barnhart, 312 F.3d 113, 131 (3d Cir. 2002)).  Such serious functional limitations are not found.  Further, it is important to note that Dr. Williams' opinion was not disregarded outright; rather, the ALJ accounted for side effects of Plaintiff's medications by restricting him from moderate or greater exposure to hazards, as well as limiting him to light work involving no more than occasional postural movements.  (R. at 15.)

With regard to the opinions of the state agency and consulting physicians, the ALJ afforded their opinions significant weight because they were consistent with the evidence as a whole.  (R. at 16.)  Plaintiff attempts to characterize the ALJ's reliance on such opinions as improper, as "[i]t is well settled that the assessments of non-examining, non-treating physicians have little evidentiary value, and such reports are not substantial evidence when contradicted by the other evidence in the record, such as treating physicians' and the claimant's testimony." (Pl.'s Mem. at 15.)  However, again Plaintiff fails to consider that the ALJ did not solely rely on such opinions in finding him not disabled.  Rather, the ALJ evaluated the medical evidence of record, Plaintiff's testimony and written statements for the record, his treating physician's opinions, and the non-examining and consulting physicians' opinions *before* arriving at his ultimate RFC conclusion.

Accordingly, the Court recommends that the ALJ's decision regarding Dr. Williams'

opinion is supported by substantial evidence and application of the correct legal standards, and

should therefore be affirmed.

> **B.** **The ALJ's credibility analysis is supported by substantial evidence and application of the correct legal standards.**

Plaintiff argues that the ALJ's credibility findings "ignore and misstate" facts in the

record. (Pl.'s Mem. at 17.) Plaintiff contends that there is nothing in the record indicating any

doubt that Plaintiff experiences severe pain and functional limitations. Plaintiff also asserts that

the ALJ failed to consider the side effects of pain medications. (Pl.'s Mem. at 19.)

After step three of the ALJ's sequential analysis, but before deciding whether a claimant

can perform past relevant work at step four, the ALJ must determine the claimant's RFC. 20

C.F.R. §§ 416.920(e)-(f), 416.945(a)(1). The RFC must incorporate impairments supported by

the objective medical evidence in the record and those impairments that are based on the

claimant's credible complaints. In evaluating a claimant's subjective symptoms, the ALJ must

follow a two-step analysis. Craig v. Charter, 76 F.3d 585, 594 (4th Cir. 1996); see also SSR 96-

7p; 20 C.F.R. §§ 404.1529(a) and 416.929(a). The first step is to determine whether there is an

underlying medically determinable physical or mental impairment or impairments that

reasonably could produce the individual's pain or other related symptoms. Id.; SSR 96-7p, at 1-

3. The ALJ must consider all the medical evidence in the record. Craig, 76 F.3d at 594-95; SSR

96-7p, at 5, n.3; see also SSR 96-8p, at 13 (specifically stating that the "RFC assessment must be

based on *all* of the relevant evidence in the case record") (emphasis added). If the underlying

impairment reasonably could be expected to produce the individual's pain, then the second part

of the analysis requires the ALJ to evaluate a claimant's statements about the intensity and

persistence of the pain and the extent to which it affects the individual's ability to work. Craig,

13

76 F.3d at 595. The ALJ's evaluation must take into account "all the available evidence," including a credibility finding of the claimant's statements regarding the extent of the symptoms and the ALJ must provide specific reasons for the weight given to the individual's statements. Craig, 76 F.3d 595-96; SSR 96-7p, at 5-6, 11.

This Court must give great deference to the ALJ's credibility determinations. See Eldeco, Inc. v. NLRB, 132 F.3d 1007, 1011 (4th Cir. 1997). The Court of Appeals for the Fourth Circuit (as the immediate controlling appellate authority for this Court) has determined that "[w]hen factual findings rest upon credibility determinations, they should be accepted by the reviewing court absent 'exceptional circumstances.'" Id. (quoting NLRB v. Air Prods. & Chems., Inc., 717 F.2d 141, 145 (4th Cir. 1983)). Therefore, this Court must accept the ALJ's factual findings and credibility determinations unless "'a credibility determination is unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all.'" Id. (quoting NLRB v. McCullough Envtl. Servs., Inc., 5 F.3d 923, 928 (5th Cir. 1993)).

Furthermore, it is well established that Plaintiff's subjective allegations of pain are not, alone, conclusive evidence that Plaintiff is disabled. See Mickles v. Shalala, 29 F.3d 918, 919 (4th Cir. 1994). The Fourth Circuit has determined that "subjective claims of pain must be supported by objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant." Craig, 76 F.3d at 591.

The ALJ found that although Plaintiff's impairment could reasonably be expected to cause the alleged symptoms, his statements concerning the intensity, persistence, and limiting effects of the symptoms were not credible where they were inconsistent with the ALJ's RFC finding. (R. at 15.) Plaintiff testified that he takes medications for his low back pain which

14

reduce his pain to a level of 4 or 5 on a scale of 1 to 10; that he has worn a back brace for the past two years, which has helped him somewhat; that the injection he received two days prior to the hearing had not helped; that he could lift a gallon of water, sit for ten minutes in a recliner, stand for ten minutes, and walk around Wal-Mart; that his medications made him "sleepy" and "drifty," caused some vision problems, and made it hard for him to concentrate on more than one thing; that he napped for thirty to sixty minutes every day; that he stopped his heavy equipment job in June 2007; that he stopped mowing commercial property on a part-time basis in October 2007 because he could not stand to sit on the mower and "get bounced around"; that he had no problems with his arms or hands; and that he did not have a mental disorder.  (R. at 14, 219-38.) Plaintiff also initially testified that he drove two to three times a week, then stated that he did not like to drive when on his medications; and, finally, he stated that he did not drive at all.  (R. at 220-21, 229, 231.)

The ALJ noted several discrepancies between the medical record, Plaintiff's testimony, and Plaintiff's written statements for the record.  For example, the ALJ noted that despite his musculoskeletal pain and medication side effects, Plaintiff stated that he lived independently, took care of his own personal needs, fed and watered livestock, prepared his own meals, washed dishes, mowed his lawn, drove, shopped for two to three hours at a time, went fishing (though not as often as he used to), and could lift up to fifty pounds ten times a day.  (R. at 15, 77-84.) Written statements for the record also indicated that Plaintiff managed his own finances, needed no reminders, could pay attention, complete tasks, and had no problems following instructions, dealing with changes, or handling stress.  (R. at 15, 77-84.)  The ALJ also noted that the medical record contains several references to Plaintiff engaging in some type of work activity at least into

2008.[8]  (R. at 15, 77-84, 118, 142, 144.)  However, Plaintiff testified that he stopped working in

October 2007 because of back pain.  (R. at 225-26, 235-38.)

The ALJ noted that such findings and activities were "clearly inconsistent" with severe

pain, sleepiness, medication side effects, and concentration difficulties precluding all work-

related activity.  (R. at 15.)  The ALJ went on to state that:

> However, in light of his impairment and related symptoms, and taking into consideration the claimant's subjective complaints, the undersigned finds that he is limited to light work . . . that does not require more than occasional climbing, balancing, stooping, kneeling, crouching, and crawling.  However, the undersigned further finds that due to alleged medication side-effects he needs to avoid moderate or more exposure to hazards such as unprotected heights and dangerous machinery.

(R. at 15.)

The Court is also compelled to note, as an aside, that the ALJ should not speculate as to

what specific medical care Plaintiff would have to receive in order to support his claim, or what

symptoms Plaintiff's impairments *could* cause, or how Plaintiff's complaints compare with the

*possible* symptoms caused by his condition.  (Pl.'s Mem. at 14, 16.)  Such inquiries are

speculative and irrelevant to Plaintiff's claim.  What is relevant is the care that Plaintiff *did*

receive, and what symptoms he actually claimed to have experienced.  Speculations as to

---

[8] Plaintiff asserts that even though he performed some work, the ALJ did not find that it was substantial gainful activity.  Plaintiff also asserts that "[i]n light of the ALJ's finding that [Plaintiff] had not performed [SGA] since the alleged onset date . . . defendant's repeated allusions to [Plaintiff's] performing work activity inconsistent with his claim for disability benefits are irrelevant though misleading."  (Pl.'s Reply to Def.'s Mot. for Summ. J. ("Pl.'s Reply") at 4, n.3.)  The Court is compelled to note that the ALJ did not explicitly find that Plaintiff's work was not SGA.  Rather, the ALJ stated that "it cannot be determined" whether Plaintiff's work activity rose to the level of SGA.  (R. at 13.)  Regardless, an ALJ is permitted to discuss any work activity Plaintiff may have engaged in, regardless of whether or not it was SGA, in making his credibility determination, as the ALJ is required to consider *all* the evidence.

possible symptoms that certain conditions may cause, or alternative theories of care, are simply not helpful or relevant to the disposition of Plaintiff's case.

With regard to side effects from Plaintiff's medications, it is again important to note that the ALJ should only consider the side effects that Plaintiff actually claimed to have experienced, and not the *potential* side effects medications may cause.  Simply because certain medications have "known" side effects does not necessarily mean that such effects are experienced by anyone who takes the medication.  Further, and as noted earlier, the Fourth Circuit has recognized that "'[d]rowsiness often accompanies the taking of medication, and it should not be viewed as disabling unless the record references serious functional limitations.'" Johnson v. Barnhart, 434 F.3d at 658 (citations omitted).  In any event, such serious functional limitations are not found in the record.

Accordingly, the Court recommends a finding that the ALJ's credibility analysis is supported by substantial evidence and application of the correct legal standards.  The ALJ considered all the evidence of record before reaching his conclusion, and included only those limitations which he found to be supported by the record.  Further, the ALJ did not completely discount Plaintiff's allegations of pain and limitations.  Instead, the ALJ accounted for such limitations by restricting him to a less arduous RFC.  The Court accordingly recommends that the ALJ's decision be affirmed in this regard.

      **C.**    **The ALJ did not err by not eliciting vocational expert testimony.**

Plaintiff argues that the ALJ erroneously failed to elicit VE testimony.  (Pl.'s Mem. at 21-23.)  Plaintiff contends that such testimony was required because he has nonexertional impairments.  (Pl.'s Mem. at 23.)

Once an ALJ determines a claimant's RFC, he may use the Medical Vocational Guidelines ("Grids") to determine the claimant's level of disability and potential for employment. Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989). The Grids categorize jobs by their physical-exertion requirements,[9] namely, sedentary,[10] light,[11] medium, heavy, and very heavy. See SSR 83-10. There are numbered tables for the sedentary, light, and medium level (tables 1, 2, and 3, respectively), and a specific rule for the heavy and very heavy levels (Rule 204.00). SSR 83-10; 20 C.F.R. Pt. 404, Subpt. P, App. 2. Based on the claimant's RFC, the ALJ must first determine which table to apply, i.e., if the claimant's RFC limits him to a sedentary exertional level, then Table No. 1 is the appropriate table. Next, based on the claimant's age, education, and previous work experience, the rule directs a finding of "disabled" or "not disabled."

Utilization of the Grids is predicated on the claimant suffering from exertional limitations, and the Grids are not applicable if the claimant suffers solely from nonexertional impairments. 20 C.F.R. § 404.1569a; see 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table 1, § 200.01(e)(1) ("The rules do not direct factual conclusions of disabled or not disabled for individuals with solely nonexertional types of impairments."). The reason for this rule is that nonexertional limitations may limit a claimant's ability to perform a full range of unskilled

---

[9] A claimant's exertional limitations determines the proper exertional level for the claimant's situation. See SSR 83-10. An exertional limitation is an impairment-caused limitation which affects one's capability to perform an exertional activity (strength activity) such as sitting, standing, walking, lifting, carrying pushing, and pulling. SSR 83-10.

[10] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. . . . Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a).

[11] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds. . . . A job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. 20 C.F.R. § 404.1567(b).

occupations at a given exertional level.  Thus, where a claimant suffers only exertional limitations, the ALJ must consult the Grids to determine eligibility for benefits.  See Walker v. Bowen, 889 F.2d 47, 49 (4th Cir. 1989); Cooper v. Sullivan, 880 F.2d 1152, 1155 (9th Cir. 1989).  At the same time, if a claimant suffers from both exertional and nonexertional limitations, then the ALJ must consult the Grids first to determine whether a rule directs a finding of disabled based on the strength requirement alone.  See 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table 1, § 200.01(e)(2).  If the claimant is found to be disabled on the strength requirement alone (i.e., a claimant is limited to light work and meets the other categories in rule 202.01), then there is no need to examine the effects of the nonexertional limitations.  However, if a rule directs a finding of "not disabled" based on the strength requirement (i.e., the claimant is limited to light work and meets one of the categories in rule 202.10), then the ALJ cannot utilize the Grids; instead, a VE must be utilized to take into account the effects of the claimant's nonexertional and exertional limitations and the claimant's RFC to determine whether there are jobs existing in significant numbers in the national economy that the claimant can perform. Walker, 889 F.2d 49-50.

It is important to note, however, that "not every nonexertional limitation or malady rises to the level of a nonexertional impairment, so as to preclude reliance on the grids."  Walker, 889 F.2d at 49 (citing Grant v. Schweiker, 699 F.2d 189 (4th Cir. 1983)).  The ALJ must inquire whether the nonexertional condition affects the claimant's RFC to perform work of which the claimant is exertionally capable.  Id.

In arguing that the ALJ erroneously relied on the Grids in finding that Plaintiff was not disabled, Plaintiff misconstrues the need for vocational expert testimony in all cases where nonexertional limitations exist.  It is important to note that "not every nonexertional limitation or

malady rises to the level of a nonexertional impairment, so as to preclude reliance on the grids."
Walker, 889 F.2d at 49 (citing Grant v. Schweiker, 699 F.2d 189 (4th Cir. 1983)).  The ALJ must
inquire whether the nonexertional condition affects the claimant's RFC to perform work of which
the claimant is exertionally capable.  Id.  In this case, the ALJ found that Plaintiff's
nonexertional limitations had little to no effect on the occupational base of light work.[12]  Such a
statement is supported by relevant Social Security Rulings.  The ALJ limited Plaintiff to
occasional climbing, balancing, stooping, kneeling, crouching, and crawling; and avoidance of
moderate or greater exposure to hazards such as unprotected heights or dangerous machinery.
(R. at 17.)  Relying on SSRs 83-12, 83-14, 85-15, and 96-9p, the ALJ found that these
nonexertional limitations had "little or no effect on the occupational base of unskilled light
work."  (R. at 17.)

SSR 83-14 states that because light work involves frequent lifting or carrying of objects
weight up to ten pounds, it is implied that a worker is able to do "occasional bending of the
stooping type."  As noted, the ALJ found that Plaintiff could engage in occasional bending and
stooping.  SSR 83-14 also states that there are nonexertional limitations or restrictions which
have "very little or no effect on the unskilled light occupational base."  Such limitations include
the inability to ascend or descend scaffolding, poles, and ropes; and the inability to crawl on

---

[12] Plaintiff cites to the district court case of Woody v. Barnhart, in which the court found
that the ALJ erred in applying the Grids as determinative without obtaining VE testimony about
occupations available for a person suffering from the nonexertional limitations of pain and
obesity, or, in the alternative, *making a specific finding that the claimant's pain and obesity did
not amount to nonexertional impairments*.  326 F. Supp. 2d 744, 746 (W.D. Va. 2004) (emphasis
added).  It is this crucial point that Plaintiff overlooks – that in that case, the ALJ erred because
he did not make a specific finding that the claimant's pain and obesity did not amount to
nonexertional impairments.  Such is not the case here.  The ALJ explicitly noted that Plaintiff's
nonexertional *limitations* had little or no effect on the occupational base of unskilled light work,
and cited SSRs 83-12, 83-14, 85-15, and 96-9p as support for the decision.

hands and knees.  Id.  SSR 85-15 also states that if a person can stoop occasionally in order to lift objects, the light occupational base is virtually intact.  Crawling and kneeling are relatively rare activities even in arduous work.  Id.  Also, a person who is restricted from being on unprotected elevations and near dangerous moving machinery (such as Plaintiff) "is an example of someone whose environmental restriction does not have a significant effect on work that exists at all exertional levels."  Id.  It is clear, then, that Plaintiff's nonexertional limitations have little to no effect on the occupational base of light work.

Plaintiff also asserts that VE testimony was required because Plaintiff cannot sustain functioning, cannot sleep at night, cannot drive, suffers from drowsiness, needs naps during the day, and experiences side effects from his medications.  (Pl.'s Mem. at 23.)  However, of crucial importance here is that the ALJ did not find that Plaintiff suffered from such limitations.[13]  Had the ALJ found that Plaintiff did so suffer, then Plaintiff would be correct in his assertion that VE testimony would be required to assess the impact on the occupational base of light work.  However, because the ALJ only found that Plaintiff should avoid dangerous heights and machinery, and had occasional postural movements, he was entitled to rely on the Grids as such limitations had little to no effect on the occupational base of light work.  Accordingly, the Court recommends a finding that the ALJ's conclusions in this regard are also supported by substantial evidence and application of the correct legal standards, and should be affirmed.

## V.  CONCLUSION

Based on the foregoing analysis, it is the recommendation of this Court that Plaintiff's motion for summary judgment (docket no. 9) be DENIED; that Defendant's motion for summary

---

[13] However, the Court notes that the ALJ did in fact take into consideration the alleged side effects of Plaintiff's medications and his claims of drowsiness by limiting him to work that did not involve moderate or greater exposure to hazards such as unprotected heights or dangerous machinery.

judgment (docket no. 11) be GRANTED; and, that the final decision of the Commissioner be

AFFIRMED.

Let the Clerk forward a copy of this Report and Recommendation to the Honorable

Robert E. Payne and to all counsel of record.

### NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and**

**recommendations of the Magistrate Judge contained in the foregoing report within**

**fourteen (14) days after being served with a copy of this report may result in the waiver of**

**any right to a _de novo_ review of the determinations contained in the report and such failure**

**shall bar you from attacking on appeal the findings and conclusions accepted and adopted**

**by the District Judge except upon grounds of plain error.**

_____/s/_____
Dennis W. Dohnal
United States Magistrate Judge

Date: <u>October 11, 2011</u>
Richmond, Virginia